**JUDGE COTE**



DAVIS & GILBERT LLP
Gerald B. Schwartz
gschwartz@dglaw.com
Dominick R. Cromartie
dcromartie@dglaw.com
1740 Broadway
New York, NY 10019
(212) 468-4800
*Attorneys for Plaintiff Bartle Bogle Hegarty, LLC,*

11 CIV 9430



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BARTLE BOGLE HEGARTY, LLC,

          Plaintiff,

   -against-

PHONEGUARD INC., and
OPTIONS MEDIA GROUP HOLDINGS, INC.

          Defendant.

Index No.

**COMPLAINT**

     Plaintiff BARTLE BOGLE HEGARTY, LLC, ("BBH"), by and through its undersigned attorneys, Davis & Gilbert LLP, for its Complaint against PHONEGUARD INC., ("PhoneGuard") and OPTIONS MEDIA GROUP HOLDINGS, INC. ("Options") (collectively "Defendants") hereby alleges as follows:

## INTRODUCTION

     1.    This is an action for breach of contract based on Defendants' failure to pay unpaid amounts due and owing to BBH under the agreement for the provision of advertising services.

## PARTIES

2.      Plaintiff Bartle Bogle Hegarty, LLC, is a New York limited liability company, with its principal place of business at 32 Avenue of the Americas, 19th Floor, New York, New York, 10013.  BBH is an advertising agency.

3.      Defendant PhoneGuard Inc., is a Florida corporation with its principal place of business at 123 NW 13th Street, Suite 310, Boca Raton, Florida, 33432.  PhoneGuard develops and sells car safety applications for handheld mobile devices and smart phones (the "Apps") and related services.

4.      Defendant Options Media Group Holdings, Inc., is a Florida corporation with its principal place of business at 123 NW 13th Street, Suite 310, Boca Raton, Florida, 33432.  Upon information and belief, Options is an applications software company focusing on mobile communications.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

6.      Venue in this district is appropriate pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

7.      On or about June 8, 2011, BBH and PhoneGuard entered into an agreement for the provision of advertising services ("Agreement") whereby BBH would create and develop an integrated marketing campaign for PhoneGuard's Apps and related services.

8. The parties executed the Agreement on July 14, 2011. A copy of the Agreement is attached as Exhibit A.

9. BBH performed the services provided in the Agreement, including, but not limited to: (i) studied the potential market for PhoneGuard's services; (ii) formulated and recommended advertising campaigns; (iii) identified available media; and (iv) prepared advertising for PhoneGuard's products and services.

10. PhoneGuard agreed to pay BBH a monthly fee of $42,500 for its services and a performance fee based on the number of consumer downloads of the Apps during the period that BBH provided services to PhoneGuard.

11. PhoneGuard also agreed to reimburse BBH for all out-of-pocket expenses, including, but not limited to: (i) all third-party vendor costs; (ii) travel costs; (iii) consumer research costs; (iv) studio costs; (v) use of technical development or software applications; and (vi) use of third-party assets.

12. The parties agreed that BBH would invoice PhoneGuard monthly and that PhoneGuard would pay such invoices within 30 days of receipt.

13. On August 12, 2011, Keith St. Clair, PhoneGuard's Chairman, terminated the Agreement in a telephone call made to Greg Andersen, BBH's CEO.

14. Mr. St. Clair did not claim in that telephone call that BBH failed to comply with any of its obligations under the Agreement.

15. On September 30, 2011, BBH, by letter, acknowledged that PhoneGuard's termination of the Agreement was effective on August 12, 2011, despite the fact that PhoneGuard failed to comply with the termination procedures requiring that PhoneGuard send a

written notice to BBH at the address provided in the Agreement.  The letter also listed the unpaid invoices for the services that BBH provided under the Agreement.

      16.    PhoneGuard did not dispute the unpaid invoices listed in BBH's letter of September 30, 2011.

      17.    On October 7, 2011, BBH sent PhoneGuard a letter listing the invoices that were then outstanding and unpaid (the "October 7 Letter").  The October 7 Letter also provided PhoneGuard with a full reconciliation of the services it provided, which included credits for services that came in under budget.  The reconciliation of the services that BBH performed that were outstanding as of the October 7 Letter included the following:

| INVOICE NO. | INVOICE DATE | INVOICE AMOUNT | COMMMENT |
|---|---|---|---|
| 20405202 | 6/20/11 | $42,500 | July Monthly Fee |
| 20405251 | 7/6/11 | $8,575 | Retouching OOP |
| 20405269 | 7/14/11 | $42,500 | August Monthly Fee |
| 20405312 | 8/2/11 | $8,730 | Talent Residual OOP |
| 20405335 | 8/11/11 | $42,500 | September Monthly Fee |
| 20405345 | 8/18/11 | $15,960 | Website Development |
| 20405346 | 8/18/11 | $2,050 | Website Design |
| 20301314 | 9/22/11 | ($2,596.29) | Residual credit for talent based on actual costs |
| 20301322 | 10/1/11 | ($3,295.09) | Retouching credit based on actual costs |
| 20301328 | 10/4/11 | ($27,975.20) | Production credit for Justin Bieber based on actual costs |

      18.    PhoneGuard did not dispute the amounts of the unpaid invoices listed in the October 7 Letter.

19.    The invoices listed in the October 7 Letter did not include BBH's pro-rated monthly retainer fee from October 1, 2011 through October 12, 2011 in the amount of $16,451.00.

20.    Pursuant to paragraph 1(c) of the Agreement, PhoneGuard was required to provide BBH with sixty-days' notice of termination, and "pay BBH, all authorized costs incurred and amounts otherwise due for services performed, including monthly fees, during such sixty (60) day period, ...."

21.    PhoneGuard terminated the Agreement on August 12, 2011. Thus, the sixty day termination period ran from August 12, 2011 through October 12, 2011. BBH invoiced PhoneGuard for its monthly services for the months of August and September. Therefore, BBH is owed the additional amount of $16,451.00 for its pro-rated monthly fee for the termination period from October 1, 2011 through October 12, 2011.

22.    The total amount due BBH including the unpaid invoices and pro-rated monthly retainer fee for October is $145,399.42 (the "Unpaid Amounts").

23.    PhoneGuard has refused without justification to pay the Unpaid Amounts, despite BBH's demand for such payment.

24.    In addition to the Unpaid Amounts, BBH is owed a fee for the number of the Apps downloaded by consumers during the time period that BBH provided services to PhoneGuard (the "Consumer Download Fees").

25.    Pursuant to Schedule 1 of the Agreement, BBH was entitled to (i) $0.50 for all consumer downloads of the Apps between 0 – 499,999; (ii) $1.00 for all consumer downloads of the Apps between 500,000 – 999,999; and (iii) $1.50 for all consumer downloads of the Apps 1,000,000 and above.

26.     PhoneGuard has not provided BBH with the total number of consumer downloads of the Apps during the relevant time period. Therefore, BBH is unable to determine the amount that it is owed for the Consumer Download Fees.

27.     PhoneGuard also agreed, pursuant to paragraph 3(h) of the Agreement, that "[i]f payments are not received by the specified due dates, BBH may assess a finance charge of one percent (1%) per month on the unpaid balance."

28.     On November 4, 2011, BBH notified PhoneGuard by letter that it intended to apply a 1% monthly interest charge on all the fees due to BBH.

29.     Pursuant to paragraph 9(d) of the Agreement, "[i]n the event of any legal action to enforce the terms of this agreement, the prevailing party shall be entitled to recover its reasonable legal fees and costs incurred in connection with such action."

30.     BBH notified PhoneGuard that in the event that BBH prevails in a lawsuit against PhoneGuard, BBH would seek its reasonable legal fees and costs.

31.     Upon information and belief, PhoneGuard is a mere instrumentality of Options and is its alter ego or general agent.

32.     Upon information and belief, PhoneGuard and Options share common ownership, officers, directors, members, and other personnel.

33.     Upon information and belief, PhoneGuard and Options commingle their assets.

34.     Upon information and belief, Options exercises complete dominion over PhoneGuard.

35.     Accordingly, Options is liable to BBH for PhoneGuard's breaches of the Agreement.

## COUNT ONE
### (Breach of Contract Against Defendants)

36.     BBH repeats and realleges each and every allegation contained in paragraphs 1 through 35 of the Complaint as if set forth fully herein.

37.     The Agreement is valid and enforceable by and between BBH and PhoneGuard.

38.     BBH duly performed all of the terms of the Agreement on its part to be performed.

39.     PhoneGuard did not dispute that BBH performed all of its obligations under the Agreement.

40.     PhoneGuard did not dispute the Unpaid Amounts.

41.     PhoneGuard has failed to pay BBH for the Unpaid Amounts.

42.     PhoneGuard did not dispute that BBH is entitled to the Consumer Download Fees.

43.     PhoneGuard has failed to provide BBH with the total number of the Apps downloaded during the relevant period so that BBH can determine the amount of the Consumer Download Fees it is owed.

44.     PhoneGuard has not disputed that BBH is entitled to 1% interest on the fees that it is owed.

45.     Upon information and belief, PhoneGuard is a mere instrumentality of Options and is its alter ego or general agent.  Therefore, Options is liable for PhoneGuard's breaches of the Agreement.

46.     By reason of the foregoing, BBH has suffered damages in an amount to be determined at trial, but in any event no less than $145,399.42, plus accrued interest, reasonable attorneys' fees and costs.

## COUNT TWO
### (Unjust Enrichment Against Defendants -- Alternative to Count One)

47.     BBH hereby realleges and incorporates by reference paragraphs 1 through 46 of the Complaint as if fully set forth herein.

48.     BBH has demanded that PhoneGuard repay the Unpaid Amounts, but PhoneGuard refuses to do so.

49.     PhoneGuard accepted these services rendered by BBH.

50.     Upon information and belief, PhoneGuard is a mere instrumentality of Options and is its alter ego or general agent.

51.     Therefore, Defendants have been unjustly enriched at the expense of BBH as a result of their failure to pay the Unpaid Amounts and the Consumer Download Fees in an amount to be determined at trial, but in any event no less than $145,399.42, plus accrued interest, reasonable attorneys' fees and costs.

## COUNT THREE
### (Accounting of PhoneGuard's Books and Records)

52.     BBH repeats and realleges the allegations stated in paragraphs 1 through 51 of the Complaint as if set forth fully herein.

53.     Under Schedule 1 of the Agreement, PhoneGuard was required to pay BBH the Consumer Download Fees.

54.    PhoneGuard has failed to provide BBH with the total number of the Apps downloaded during the relevant period so that BBH can determine the amount of the Consumer Download Fees it is owed.

55.    By virtue of the foregoing, BBH is entitled to an accounting of PhoneGuard's books and records as it relates to the Agreement and the Consumer Download Fees due and owing pursuant thereto.

WHEREFORE, BBH demands judgment against Defendants as follows:

(a)    Compensatory damages in an amount to be determined at trial, but in any event, no less than $145,399.42;

(b)    Unpaid interest in an amount to be determined at trial;

(c)    The costs and disbursements of this action, including reasonable attorneys' fees; and

(d)    Such other and further relief as the Court deems necessary and proper.

Dated:    New York, New York
          December 22, 2011

DAVIS & GILBERT LLP

By: _____
    Gerald B. Schwartz
    Dominick R. Cromartie
    1740 Broadway
    New York, NY 10019
    (212) 468-4800
    *Attorneys for Bartle Bogle Hegarty, LLC*

# EXHIBIT A

July 2, 2011

PhoneGuard, Inc.
Scott Frohman
CEO
123 NW 13th St, Suite 300
Boca Raton, FL 33432

Dear Mr. Keith St. Clair:

       This letter will set forth the terms of our agreement to serve as your advertising agency and your agreement to employ us in such capacity on the terms and conditions set forth below.

**1.    APPOINTMENT; TERM; TERMINATION**

    (a)    Appointment.

        You appoint Bartle Bogle Hegarty LLC (a New York Limited Liability Company) (BBH) as your advertising agency and BBH agrees to accept such appointment.

    (b)    Term.

        The term of this agreement shall commence as of June 8, 2011 and shall continue through December 31, 2011, subject to Section 1(c).

    (c)    Termination.

        Either party has the right to terminate this agreement with 60 days written notice.  During this 60 day notice period, monthly fees as outlined in Section 3 and Schedule 1, will continue to be earned and to be paid by you.  You shall pay BBH, all authorized costs incurred and amounts otherwise due for services performed, including monthly fees, during such sixty (60) day period, and for contracts executed prior to such written notice of termination that can not be otherwise terminated without penalty during such sixty day period  As soon as reasonably possible (expected to be within thirty (30) days after the completion of the above notice period), BBH shall perform a full reconciliation of actuals vs. approved estimates on all client assignments.  As a result of that reconciliation to actuals, any additional amounts owed to BBH will be invoiced to you, and any amounts owed to you will be refunded to you via credit invoice or if no debit invoices remain outstanding, as a payment made to you.

**2.    AGENCY SERVICES**

       BBH will perform the following services (hereinafter referred to as "Basic Services") as mutually deemed necessary and as outlined in Schedule 1, including the following:

    **(a)**    Study your business and analyze the present and potential markets for your products/services.

    **(b)**    Formulate and recommend strategies, ideas, plans, campaigns and concepts for your advertising.



    (c)      Employ in your behalf our knowledge of the available media.

    (d)      In the execution of these plans, when approved by you, BBH will do the following (as applicable):

        (i)      Write, design, illustrate or otherwise prepare your advertisements for newspapers, magazines, radio, television, trade papers, on-line or other appropriate media.

        (ii)      Incorporate the contents of advertisements into mechanical or other appropriate forms of reproduction and forwarding them with proper instructions for the processing thereof.

        (iii)      Order through a third party the space, radio or television time, or other means to be used for your advertising, endeavoring to secure the most advantageous rates available.

        (iv)      Check and verify insertions, displays, broadcasts or other means used, to such degree as is usually performed by advertising agencies.

        (v)      Review and pay invoices for space, radio or television time, preparation and services

## 3.  COMPENSATION AND CHARGES

In consideration of the Basic Services to be performed by BBH, as set forth in Section 1, you will compensate BBH in accordance with the following:

    (a)      **Agency Remuneration**

        (i)      BBH shall be remunerated in accordance with the fee schedule set out on Schedule 1 attached to this Agreement in respect of the assignments identified therein. Any additional assignments or projects shall be subject to agreement of additional remuneration and will be covered by the terms of this Agreement.

        (ii)      Remuneration and assignments shall be reviewed in the event of material changes to your requirements. Any mutually agreed changes resulting from the review shall be confirmed in writing and shall replace the provisions of Schedule 1.

    (b)      **Media Adjustments**

        (i)      If, in an approved medium having a schedule of graduated rates, less space or time than contracted for is used, you will pay us the difference, if any, between the amount due at the rate named in the contract and the amount due at the rate applicable to the quantity of space or time used, in accordance with such short rate payments as BBH may be obligated for in connection with your advertising.

        (ii)      If, in an approved medium having a schedule of graduated rates, more space or time than contracted for is used, BBH shall refund to you any excess you may have paid BBH over the amount due.

    (c)      **Production**

You will pay BBH for the following items prepared or purchased for you pursuant to your authorization, at our cost, before deduction of cash discount.

(i)   Artwork (such as comprehensives, finished art, special but no rough layouts, storyboards) and mechanical production, typography, retouching, contract proofing, prepress, file distribution, printing and similar items.

(ii)   Production cost for radio and television commercials, motion pictures, slides and slide films.

(iii)   Expenditures incurred in securing testimonials and the right to use names and/or likenesses of individuals (including talent session and reuse fees) and copyrighted material.

(iv)   Jingles, musical arrangements and productions, recordings, special writers, production supervision, kinescopes, film and videotape.

**(d)   Out-of-Pocket**

BBH assume all normal charges incident to the routine conduct of our business, such as normal and, routine postage, facsimile copies, regular telephones, local travel expenses, etc. However, the following items will be billed to you at our actual net cost without commission or production services charges:

(i)   Travel

Reasonable travel expenses, accommodations and meal expenses for trips of all our personnel authorized or requested by you.

(ii)   Packaging, Shipping, and Delivery

Packaging and shipment of advertising material; postage, express and other transportation charges for the shipment of such advertising material. Whenever possible, BBH will use your messenger and Federal Express accounts.

**(e)   Charges for Internal Services and Studio Charges**

Internal services provided by us (as distinguished from services bought outside our organization) such as preparation of production storyboards, layout adaptations, materials and preparation related to client presentations, color copies, specialty comps including but not limited to booklets, catalogues, collateral materials, etc. video/audio edits will be charged at our then current rates that are comparable to market rates.

**(f)   Discounts and Rebates**

If at any time BBH shall obtain discounts or rebates from any supplier, whether based on volume of work given to such supplier by us or otherwise, then and in such event, BBH shall credit to you the proportion of such discount or rebate as the volume of work given by us to such supplier on your behalf bears to the total volume of work given by us to such supplier from all our clients during the pertinent period to which the discount or rebate is applicable.

**(g)   Legal Clearance**

3

A7

Whenever possible, BBH will use your in house counsel for legal clearances. If such in house counsel is not available, the cost of legal clearances on copy approval or other legal work required such as trademark searches, is to be paid by you.

(h) **Interest**

If payments are not received by the specified due dates, BBH may assess a finance charge of one percent (1%) per month on the unpaid balance.

(i) **Net Cost**

References to our "net cost" mean the actual amount BBH are required to pay or credit to a third party to purchase materials and/or services, for or account, i.e., the gross amount charged by the third party, less any and all related discounts (other than cash discounts), rebates, commissions and similar items paid or allowed by the third party to our agency.

4. **PAYMENT TERMS AND BILLING PROCEDURES**

(a) **Agency Fee**

Agency fees are due on the first of the month of service. BBH will bill you thirty (30) days in advance.

(b) **Media Time and Space (if applicable)**

BBH will bill you for all approved media time and space charges one month prior to insertion date. All invoices are payable to us within thirty (30) days. In the case of rush payments needed for immediate payment by us, you agree to pay these invoices upon receipt.

(c) **Advertising Production**

For all approved print, radio, interactive, production presentation and direct expenses on any given project, BBH will initially bill you 100% of estimated costs as a condition for the production to commence. A final reconciliation, including any credit invoice, will be completed as quickly as possible, with reasonable efforts to have it done within 90 days of completion of the job and all vendor costs are in. Such reconciliation shall identify, with respect to each expense, the amount prepaid, the actual cost and the difference. In the event of any overpayment, you shall receive a credit invoice within 5 days of such reconciliation.

In both of the above scenarios, BBH must receive the initial upfront payment at the time the production is awarded to the outside vendor, since payment is due to them at that time. Any delay in receiving such initial payment, may result in a delay and/or additional costs to the production.

(d) **Other Charges**

Other charges (travel and miscellaneous costs) will be billed to you as incurred in full quarterly in advanced, based on approved estimates, and payable thirty (30) days from receipt of invoice. Final reconciliation, including any credit invoice, will be provided within 90 days of quarter-end.

4

(e)   Invoices

All actual invoices shall provide a detailed breakdown of services provided, expenses incurred, amounts prepaid and amounts due (either on invoice or within supporting documentation of invoice). Any invoice setting forth expenses or costs to be reimbursed to BBH shall be accompanied by sufficient evidence thereof. In the event of any overpayment, you shall receive credit invoice within 5 days of such invoice or reconciliation.

**5.   APPROVALS**

Before executing any of your advertising, and before making any expenditure in connection with your account, BBH will obtain your approval thereof. If possible, approvals will be in writing (including email or facsimile), provided that written approval with respect to any service not identified on Schedule 1 ("Special Services") shall in all cases be obtained by BBH prior to incurring any obligations in connection with such Special Services. It is understood that with regard to production related expenditures, BBH shall provide a written estimate of the anticipated costs for your prior approval. If actual costs on any such estimate exceed the approved amount by more than 10%, BBH shall obtain your prior written approval of any such excess.

**6.   OWNERSHIP**

All advertising materials prepared for you will be your sole and exclusive property; provided, however, such materials may be withheld by BBH until such time as such material have been paid for by you. All ideas developed exclusively by BBH for you and rejected by you will remain our property. In addition, from time to time, BBH may present to you ideas and concepts (the "Ideas") which are outside the scope of services in Schedule 1. It is intended that these additional Ideas are presented for consideration by you. However, it is understood that until and unless the parties reach an agreement setting forth the terms under which they would mutually proceed to develop and exploit such Ideas, the Ideas shall remain the sole property of BBH.

**7.   <u>INDEMNITY</u>**

(a)   You will indemnify, defend and hold us harmless from and against any loss, cost, liability or damage (including reasonable attorneys' fees and costs) resulting from any claim, injunction, subpoena, suit or proceeding (threatened or otherwise) made or brought against us, or where BBH is named in a case on your account (i) based upon any advertising or materials that BBH create or produce for you and which you approve before its publication, broadcast or distribution (which indemnity shall not apply in any situation where our indemnity of you will apply as provided in paragraph 7(b) below); (ii) based upon information or materials provided by you; (iii) based upon the use of your products/services; (iv) based on risks which BBH have brought to your attention where you have elected to proceed.

(b)   BBH agrees to indemnify, defend and hold you harmless from and against any loss, cost, liability or damage (including reasonable attorneys' fees and costs) resulting from any claim, injunction, subpoena, suit or proceeding (threatened or otherwise) made or brought against you, or where you are named in a case on BBH's account, for violation of the rights of privacy or publicity, copyright infringement, intellectual property infringement, libel, slander, defamation or plagiarism, that arises from advertising materials created and/or produced by, or on behalf of, BBH, which materials are used by you without material modification; provided, however, this indemnification obligation shall not apply to any materials or information supplied by you to us.

5

8.      **NOTICE**

Any notice required to be made or given hereunder shall be in writing and shall be deemed to have been made or given when any such notice is hand delivered by messenger or by recognized overnight delivery service or by registered or certified mail, return receipt requested, to Agency or Client, as the case may be, as follows:

| Agency | Client |
|---|---|
| Bartle Bogle Hegarty LLC | PhoneGuard, Inc. |
| 32 Avenue of the Americas | 123 NW 13th Street |
| 19th Floor | Suite 310 |
| New York, New York 10013 | Boca Raton, Florida 33432 |
| Attn: Suzanne Kucera | Attn: Scott Frohman |

9.      **GENERAL PROVISIONS**

(a)     You reserve the right to reject, cancel or stop any and all media or production plans, schedules, or work in process, and in such event BBH shall immediately take proper steps to carry out your instructions, but you agree to assume liability for all authorized commitments, to reimburse us for all expenses incurred, and to pay us any related service charges in accordance with the provisions of this agreement.

(b)     BBH shall keep in strictest confidence trade secrets or confidential information furnished to BBH by you and BBH shall not disclose such trade secrets or confidential information to any third party without your prior written consent.

(c)     BBH shall take every reasonable precaution to safeguard any and all of your property entrusted to our custody or control, but in the absence of negligence on our part or willful disregard by us of your property rights, BBH is not to be held responsible for any loss, damage, destruction or unauthorized use by others of any such property.

(d)     In the event of any legal action to enforce the terms of this agreement, the prevailing party shall be entitled to recover its reasonable legal fees and costs incurred in connection with such action.

(e)     It is understood that you may at any time during the term of this agreement and for a period of one year thereafter, upon reasonable notice, during normal business hours to examine our records directly pertaining to the handling of your advertising.

(f)     This agreement and all issues collateral thereto shall be governed and construed in accordance with the laws of the State of New York pertaining to contracts made and to be performed entirely therein.

(g)     Upon you prior written consent, BBH shall have the right to disclose your name as our client in various PR-related materials including but not limited to; our website, new business proposals and external publications. Further, upon your prior written consent, BBH shall have the right to submit all final work to various award shows and include in new business proposals; among other types of submissions. Nothing in this paragraph will override BBH's obligations related to confidentiality of non-public information about your company or your products.

(h)     **Sections 4(e), 7 and 9 shall survive termination of this agreement.**

*[Signature Page to Follow]*

6

Your signature together with ours below will constitute this a binding agreement between us as of the date and year first written above.

**ACCEPTED AND AGREED:**

Bartle Bogle Hegarty LLC

By: _____

Date: _____7/14_____, 2011

PhoneGuard, Inc.

By: _____

~~Scott Frohman, CEO~~

Date: _____7/14/11_____, 2011

7

**Schedule 1: SOW & Agency Compensation**
**See below**



B B I·

June 8, 2011
Mr. Keith St. Clair
PhoneGuard, Inc.
123 NW 13· Street, Ste 300
Boca Raton, FL 33432

Dear Keith,

The following outlines the foundation of an agreement between PhoneGuard, Inc and BBH from
June 8, 201· to December 31, 2011.

**SCOPE**
- PhoneGuard consumer launch commencing July 11, 2011 through December 31, 2011

**COMPENSATION/STRUCTURE**
- $42,500/month base retainer
- Consumer app performance bonus
  - 0---499,999 app downloads: $0.50/per
  - 500,000---999,999 app downloads: $1.00/per
  - 1,000,000+ app downloads: $1.50/per

**CLIENT INPUT**
- Business and marketing objectives on brand/product level
- Marketing communications budget
- Immersion of BBH team in business, product platform

**AGENCY DELIVERABLES**
- Strategic framework comprised of a new PhoneGuard positioning, campaign brief
  - 2 rounds based on consolidated client feedback
- Creative development of an integrated campaign and engagement plan
  - 2 rounds based on consolidated client feedback
- Campaign distribution and management within selected social media channels
- Production oversight of creative executions
- Measurement and optimization plan

To ensure mutual alignment of tasks and resources, we propose that we step back and
reassess the needs and related compensation structure within the relationship following the first
six months of the engagement between PhoneGuard, Inc and BBH.

9



B B H

***PLEASE NOTE REGARDING OUT OF POCKET COSTS:***
*All production costs that require third---party vendor resources such as but not limited to: photo shoots, retouching of imagery, mechanical development and digital development are produced as out---of--- pocket expenses and costs are passed through to BBH clients with no commission/mark---up.*

*Agency fees do not include reasonable OOP costs, which BBH would submit to PhoneGuard, Inc for pre--- approval:*
- *Any travel costs, including agency travel for presentations. Reasonable, duly documented OOP expenses (coach---class if airfare is required) are billable at cost. OOP are always subject to PhoneGuard, Inc. prior written approval*
- *Any consumer research costs involving OOP such as recruiting vendors and participant incentives*
- *Any studio costs related to layout adaptations, materials and preparation for client presentation and mechanical production, typography, retouching, contract proofing, prepress, file distribution, printing and similar items*
- *All technical development of digital assets – as well as any use of software or application*
- *Any usage rights of 3ʳ party assets*

**BILLING PROCEDURES**
BBH will invoice PhoneGuard, Inc on a monthly basis in advance and due in the month that services are being provided and PhoneGuard, Inc will pay such invoices within thirty (30) days of receipt. All amounts described snall be in U.S. Dollars.
- This fee includes agency staff time to support the planning and research, creative development and production deliverables as defined above, from June 8, 2011 – December 31, 2011.

On behalf of everyone at BBH, we look forward to partnering with you and your team and thank you again for this opportunity.

**AGREED AND ACCEPTED**

------------------------------------
Greg Anderson
CEO, BBH NY

------------------------------------
DATE

------------------------------------
Keith St. Clair
Chairman, PhoneGuard, Inc.

------------------------------------
DATE

10